**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CLAYTON WILLIAMS ENERGY, INC., et al** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4742-HGB-SS** |
| **ORLEANS LEVEE DISTRICT, et al** | |

### REPORT AND RECOMMENDATION

The District Court referred the determination of the motion of the interpleaders, Clayton Williams Energy, Inc. ("CWEI") and EnergyQuest II, LLC ("EnergyQuest") (sometimes collectively referred to as "Interpleaders"), for attorneys' fees and costs. Rec. doc. 99. For the reasons described below, it is recommended that CWEI and EnergyQuest be awarded attorneys' fees and costs of $60,393.77.

### SUMMARY OF DISPUTE

On February 5, 2002, Core Energy Group, Inc. ("Core") entered into a mineral lease with the Orleans Levee District ("OLD") for 693.64 acres in the Bohemia Spillway. Core assigned the lease to Clayton Williams, who drilled a productive well. On November 3, 2004, the land surrounding the well was unitized with 399.99 of the 639.99 acres in the unit. Rec. doc. 1. Williams paid royalties to OLD as required by the lease.

In August, 2007, there were controversies over some of the acreage in the unit. First, there was a dispute over whether OLD owned some of the acreage in the unit. Louis Cornay and Jeanne Cornay, the receivers for Souther Delta Land Company ("Receivers"), contended that they owned some of the acreage in the unit. The second controversy concerned the precise amount of the

acreage in the unit subject to the ownership controversy. By November 20, 2009, OLD and Receivers settled these controversies. There is no longer any dispute over the distribution of the royalties from the unit. The remaining issue concerns approximately $78,000 in fees and costs which CWEI and EnergyQuest contend were incurred to protect themselves from duplicate liability.

## LITIGATION

In August, 2007, the Receivers notified CWEI and EnergyQuest of their claims to some of the acreage. Williams stopped making royalty payments to OLD. See Orleans Levee District v. Clayton Williams Energy Inc., 08-3912-HGB ("OLD Suit")(Rec. doc. 1).

On November 14, 2007, the State certified that land sold to OLD in 1929 was returned to the Receivers. OLD disputed the State's certification and filed suit in state court in Baton Rouge. On November 14, 2007, the Receivers demanded royalty payments attributable to acreage formerly owned by it. Although it appeared that only some of the disputed acreage was within the unit, Williams suspended all royalty payments to OLD. On March 7, 2008, Williams assigned the lease to EnergyQuest. A July 11, 2008 survey demonstrated that the disputed acreage was 39.15% of the unit. Rec. doc. 1.

On July 11, 2008, OLD filed suit against CWEI and EnergyQuest. OLD sought a judgment canceling the lease, an accounting, royalties, and attorneys' fees. OLD Suit - Rec. doc. 1. On July 24, 2008, Williams and EnergyQuest released the royalties attributed to the undisputed acreage to OLD. Rec. doc. 1. On October 20, 2008, OLD, CWEI and EnergyQuest settled the OLD Suit. The settlement included OLD's consent of the assignment to EnergyQuest, the filing of the interpleader action concerning the "disputed acreage," and dismissal of the OLD Suit. OLD reports that the "disputed acreage" was defined as comprising 156.59 acres on a specified survey plat. Rec. doc.

2

101, n. 5 at page 4. On November 7, 2008, the OLD Suit was dismissed. OLD Suit-Rec. doc. 10.

On October 27, 2008, CWEI and EnergyQuest filed an interpleader action. Rec. doc. 1. They were authorized to deposit more than $2.1 million into the registry of this Court together with additional sums which may from time to accrue in the future and were attributable to the disputed acreage. They were released of all liability to any of the defendants for the money deposited. Rec. doc. 3. Additional deposits were made. For example, on January 29, 2010, a deposit of $24,732.00 was made. Rec. doc. 10. The Interpleaders requested a judgment determining the rightful owner of the disputed acreage with instructions on future payments. They requested reasonable attorneys' fees. Rec. doc. 1.

On February 13, 2009, the Receivers claimed that the amount of acreage in controversy was greater than 156.59 acres. In response, Interpleaders filed a motion to increase the percentage of the royalties to be deposited from 39.15% of the unit to 81.67954% of the unit. Rec. doc. 16. The motion was marked deficient. It was not cured. There was no further action on the motion.

On September 15, 2009, OLD moved to dismiss the case. Rec. doc. 25. It contended that, pursuant to Act 233 of 1984 of the Louisiana Legislature, the Interpleaders were not exposed to duplicate liability because of the OLD/Receivers ownership controversy. OLD contended that: (1) all royalties should be paid to it; (2) the controversy between OLD and Receivers would be resolved between themselves; and (3) the interpleader should be dismissed. The Interpleaders opposed this motion. Rec. doc. 37. There was no ruling on it.

The Receivers filed three motions for partial summary judgment. Rec. docs. 31-33. The Interpleaders filed oppositions. Rec. docs. 36 and 38. The District Judge did not rule on the motions.

3

On November 20, 2009, the parties reported that the case was settled. An order of dismissal was entered. Rec. doc. 90. On January 11, 2010, the Interpleaders were authorized to deposit nearly $600,000 into the registry of the Court. Rec. doc. 93. On January 20, 2010, the deadline in the order of dismissal was extended to March 22, 2010. Rec. doc. 96.

On March 1, 2010, the Interpleaders filed their motion for attorney's fees and costs in connection with the handling of the interpleader. They reported that the parties were unable to resolve: (1) their right to attorneys' fees; and (2) the amount of the fees and costs. Rec. doc. 97.

## ARGUMENTS OF THE PARTIES

The Interpleaders seek an award of $77,800.95 for attorneys' fees and costs. They contend that: (1) this was a complex matter because of: (a) the dispute over the common boundary line for two sections within a township; (b) the application of the Return of Lands Act; and (c) the conduct of OLD and Receivers; (2) they were required to participate in discovery; (3) they acted in good faith; (4) their work only benefitted themselves to the extent it ensured the preservation of the interpleader action; and (5) the case was not delayed by any of the parties. In addition to the statements of their counsel, the Interpleaders provided an affidavit from John Wilson of Liskow & Lewis. Rec. doc. 97. OLD contends that the fee is excessive because it includes: (1) work on a prior lawsuit; (2) time spent responding to discovery; (3) routine responsibilities for an interpleader; (4) preparation of a motion which was not filed; (5) duplicative fees charged by Stephen Baker; and (6) time spent preparing the motion for fees and costs. Rec. doc. 101. The Receivers joined in part of OLD's opposition. Rec. doc. 103.

## APPLICABLE LAW

A district court has the authority to award reasonable attorneys' fees in interpleader actions.

Rhoades v. Casey, 196 F.3d 592 (5th Cir. 1999). The award of attorneys' fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants. Id. at 603. One commentator stated that:

> Because of the discretionary character of the court's power, and because its exercise depletes the fund, costs and fees will not be allowed as a matter of course. Typically, they are available only when the party initiating the interpleader is acting as a mere stakeholder, which means that he has admitted liability, had deposited the fund in court, and has asked to be relieved of any further liability.

7 Wright, Miller and Kane, Federal Practice and Procedure §1719 (3d ed. 2007). Five factors have been identified for consideration: (1) whether the case is simple or involved; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly protracted the proceedings. Primerica Life Insurance Company v. Baccus, 2009 WL 250027, *6 (N.D. Tex.).

Assuming that the interpleader is entitled to a fee, the next step is the calculation of the fee. To calculate an attorneys' fees award the district court first calculates the "lodestar." Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Hensley v. Eckerhart, 103 S. Ct. 1933, 1939-40 (1983). However, "the district court [retains] broad discretion in setting the appropriate award of attorneys' fees." Hensley, 103 S. Ct. at 1939-40.

In calculating the number of hours reasonably expended on the litigation, whether the total number of hours claimed were reasonable, and whether specific hours claimed were reasonably expended, the court must first ascertain the nature and extent of the services supplied by defendant's attorneys. Hensley, 103 S. Ct. at 1939-40. The district court must eliminate excessive or duplicative

5

time.  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993); see Hensley, 103 S. Ct. at 1939-40.

"The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)."  Forbush, 98 F.3d at 821; see also Walker v. United States Dep't of Housing and Urban Dev., 99 F.3d 761, 771-73 (5th Cir.1996) (describing the limited circumstances in which an adjustment to the lodestar is appropriate).  In Hensley the Supreme Court noted that many of the Johnson factors are "subsumed" in the initial calculation of reasonable hours and rates.  103 S. Ct. at 1940 n. 9.

## ANALYSIS

This was not a simple interpleader where an insurance company is confronted with conflicting claims to the proceeds of an insurance policy.  An interpleader permits such an insurance company to deposit the money and walk away from the dispute.  Where the beneficiaries contest the interpleader, seek discovery, and oppose the insurance company's motion for summary judgment, fees may be awarded.  See First Colony Life Insurance Co. v. Alfred J. Kreppin, Jr., et al, 05-6849-JCZ-SS (Rec. docs. 70 and 86).

Because of the ownership controversy and the controversy over the amount of acreage in dispute, this was an involved interpleader.  The Interpleaders were in good faith and acted with diligence.  There is no evidence that prior to the August, 2007 notice from Receivers, there was any issue in the relationship between Williams and OLD.  But for the controversy over the Bohemia Spillway, there would have been no litigation.  Assuming that OLD is correct and, pursuant to Louisiana law, the interpleader was not required, the fact that CWEI and EnergyQuest resorted to federal court and sought to remain in federal court to protect themselves from exposure for duplicate

6

liability does not demonstrate bad faith. As a result of the litigation, the structure of the lease was not altered. The royalty payment was unchanged. The only benefit to the Interpleaders was protection from duplicate liability. The Interpleaders did not improperly delay the proceedings but rather the parties worked expeditiously to resolve the OLD Suit and the interpleader. This analysis of the factors described in Primerica Life Insurance Company v. Baccus demonstrates that the court's discretion should be exercised to grant attorneys' fees to Interpleaders.

The first step in the calculation of the lodestar is the determination of the hours reasonably expended. OLD contends that the time for the following should be eliminated: (1) defense of the OLD Suit; (2) responding to discovery; (3) routine matters, for example telephone conferences with counsel for Receivers; (4) preparation of the motion to modify the order on deposit of funds; (5) preparation of the opposition to the motion to dismiss; (6) preparation of motion for award of attorneys' fees; and (7) work performed by Stephen Baker.

The time spent on the defense of the OLD Suit will be included in the lodestar. But for the controversies over the ownership of the acreage in the unit and the amount of acreage in dispute, there would have been no OLD Suit. The time sheets for Interpleaders' counsel indicate that the suit was settled on October 17, 2008. Rec. doc. 97 (Exhibit A-1). A review of the time entries from August 12, 2008 (the first entry for counsel for Interpleader) through October 17, 2008 indicates that much of the time was spent on interpleader issues or matters pertinent to the interpleader.

The time spent on discovery and "routine business" like telephone conferences with counsel was reasonable and will be included in the lodestar. Because the Interpleaders were in good faith in filing their action in federal court, they were in good faith in opposing OLD's motion to dismiss the interpleader. The time spent opposing the motion to dismiss was reasonable and will be included

7

in the lodestar.

Interpleaders did not respond to two issues raised by OLD: (1) preparation of a motion to modify the order on the deposit of funds; and (2) Stephen Baker's activities. The two matters appear related. On January 22, 2009, there were communications between counsel for Interpleaders and Receivers regarding the interior boundary of the unit and possible survey errors. There was a telephone conversation with the surveyor, Mr. Stelly, concerning a meeting. Rec. doc. 97 (Exhibit A-1). By February 6, 2009, a demand from Receivers that all royalties be deposited into the registry of the Court was anticipated. Id. Mr. Baker's first entry is January 29, 2009, and it concerned the scheduling of a meeting with Mr. Stelly. On February 13, 2009, Mr. Baker spoke to counsel for Receivers. Rec. doc. 97 (Exhibit B-1). Although a motion to increase the percentage of the royalties to be deposited from 39.15% of the unit to 81.67954% of the unit was filed, it was marked deficient. Rec. doc. 16. It was not cured, and there was no further action on the motion. The failure to cure the deficiency raises questions about the need for the motion. The Interpleaders have not demonstrated the reasonableness of the time spent on the preparation of the motion to modify. The following entries will be eliminated:

| Date | Timekeeper | Hours | Amount |
|---|---|---|---|
| 03/12/09 | MTD | 1.30 | 455.00 |
| 03/13/09 | MTD | 2.80 | 980.00 |
| 03/13/09 | JMH | 1.10 | 93.50 |
| 03/17/09 | MTD | 0.60 | 210.00 |
| 03/24/09 | MTD | 1.40 | 490.00 |
| 03/34/09 | JMH | 0.30 | 25.50 |
| 03/25/09 | JMH | 2.80 | 238.00 |

| | | | |
|---|---|---|---|
| 03/26/09 | JMH | 1.70 | 144.50 |
| Total | | | 2,636.50 |

Mr. Baker states that on March 9, 2009, CWEI requested that he prepare "a title opinion that identified and analyzed the legal issues involved in this matter, particularly those relating to competing claims of ownership over the disputed lands and royalties involved in this proceeding." Rec. doc. 97 (Exhibit B at 2). The Interpleaders do not explain why Mr. Baker's work was required. It is clear that Carver Darden possessed the expertise required for any oil and gas issue. Mr. Baker's statements reflect entries which indicate that his time was duplicative. For example, there are entries for conversations with Mr. Darden's secretary, review of e-mails, review of letters, motions, and discovery responses.[1] For these reasons, Mr. Baker's time will be excluded from the lodestar.

The last time entry for counsel for Interpleaders is January 13, 2010. Rec. doc. 97-4 (Exhibit A-1). The motion for attorneys' fees was not filed until March 1, 2010. Rec. doc. 97. Since then the Interpleaders filed a reply memorandum. Rec. doc. 109. The interpleaders have not supplemented their request for attorneys' fees with the time spent since January 13, 2010. Instead, the Interpleaders request an additional $5,300.00 to cover the estimated fees and costs for this work. Without billing records to support the request for additional time, the reasonableness of the request cannot be evaluated.

The next step in the calculation of the lodestar is the determination of a reasonable hourly billing rate. The Interpleaders supported their request for attorneys' fees with an affidavit from John

---

[1] These entries also reflect a failure to exercise billing judgment which refers to the usual practice of law firms writing off unproductive, excessive, or redundant hours. Walker v. United States Dep't of Hous. and Urban Dev., 99 F.3d 761, 769 (5th Cir.1996).

9

Wilson. The affidavit demonstrates the reasonableness of the hourly rates. Rec. doc. 97 (Exhibit C). Many of the <u>Johnson</u> factors are "subsumed" in the initial calculation of the reasonable hours and rates. <u>Hensley</u>, 103 S.Ct. at 1490. For this reason it is not necessary to carry the analysis further.

OLD objects to the costs recorded on the invoices from counsel for Interpleaders. It contends that costs should be limited to those directly associated with the preparation and filing of the interpleader. For the reasons described above, only costs on the statement for work on the motion to modify the deposit order will be eliminated. These costs were $243.38. OLD also contends that the charges for Westlaw are excessive, or, in the alternative, that such charges should be absorbed into firm overhead. OLD has not presented any evidence that it requested an explanation from Interpleaders' counsel on the Westlaw charges. It has not presented any authority demonstrating that Westlaw charges should be absorbed into firm overhead. It has not even described the practices of its own counsel as to whether such charges are included in firm overhead. No further adjustment is required to the costs sought by Interpleaders.

The following shall be subtracted from the amount sought by Interpleaders: (1) time and costs spent on motion to modify; (2) the statements from Mr. Baker; and (3) fee preparation.

| | | | |
|---|---|---|---|
| Total requested | | | 77,800.95 |
| Less | Preparation of motion to modify | 2,636.50 | |
| | Costs on motion to modify | 243.38 | |
| | Mr. Baker's fee request | 9,227.30 | |
| | Estimate for preparation of fee request | <u>5,300.00</u> | |
| | | <u>17,407.18</u> | |
| Net award | | | 60,393.77 |

10

## RECOMMENDATION

IT IS RECOMMENDED that the motion of CWEI and EnergyQuest for attorneys' fees and costs (Rec. doc. 97) be granted in part and denied in part and they be awarded attorneys' fees and costs of $60,393.77.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. USAA, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 31st day of March, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**